Filed 4/14/25  In re E.H. CA5

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re E.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>E.H.,<br><br>    Defendant and Appellant. | F087985<br><br>(Super. Ct. No. JJD074329)<br><br>**OPINION** |

<u>THE COURT</u>[*]

APPEAL from an order of the Superior Court of Tulare County.  John P. Bianco, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]    Before Franson, Acting P. J., Smith, J. and Snauffer, J.

-ooOoo-

Minor E.H. contends on appeal that the juvenile court's disposition order committing her to the mid-term program must be reversed and the matter remanded. The People disagree, and alternatively argue the issue of whether the court erred when it committed her to the mid-term program may be moot. We dismiss the appeal as moot.

## PROCEDURAL SUMMARY

On July 22, 2022, a juvenile wardship petition was filed in Tulare County Superior Court, pursuant to Welfare & Institutions Code section 602,[1] alleging minor committed battery (Pen. Code, § 242; count 1). A section 300 petition was also filed. Subsection c-1 of the section 300 petition alleged minor was at substantial risk of serious emotional damage, due to her adoptive parents' abusive behavior and neglect.[2] The petition stated minor's adoptive parents' derogatory statements about her being sexually abused prior to adoption caused her to self-harm and abscond from their home. Subsection g-1 of the section 300 petition alleged the adoptive parents were unwilling or unable to care for minor and no other relatives were available.

On July 25, 2022, the juvenile court held a detention hearing. Minor denied the allegation of the section 602 petition. The court ordered a section 241.1 staffing report and minor was placed in a resource home.

On August 26, 2022, an amended petition was filed further alleging minor committed vandalism (Pen. Code, § 594, subd. (a); count 2) and two counts of misdemeanor battery (Pen. Code, § 242; counts 1 & 3).

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] Minor had run away from home. She reported her adoptive parents made derogatory comments to her. The petition indicated the adoptive parents were unwilling or unable to care for minor.

On October 12, 2022, after a staffing and suitability report was completed,[3] the juvenile court found minor was suitable for an informal probation disposition alternative pursuant to section 654.2.  The court granted informal probation.

On January 12, April 5, and May 17, 2023, the juvenile court found minor to be in partial compliance with her informal probation.

On July 18, 2023, the juvenile court indicated it intended to dismiss the informal probation as successfully completed and seal minor's record.  However, minor's adoptive mother disclosed minor had committed a serious new offense and was expelled from school.  The court then continued the case and minor's informal supervision.[4]

On July 21, 2023, a second amended petition was filed, further alleging minor committed felony assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4); count 4).

On August 3, 2023, minor denied the allegations of the second amended petition. The juvenile court ordered a section 241.1 staffing report and the matter was referred to probation for a section 654.2 suitability report.

On August 21, 2023, a new section 654.2 suitability report and a section 241.1 staffing report were completed.  The juvenile court ordered minor to continue with informal probation.  The court also ordered minor to remain a dependent.

On October 25, 2023, a third amended petition was filed, adding two additional misdemeanor counts, alleging as follows:  misdemeanor battery (Pen. Code, § 242;

---

[3]     Two suitability reports for minor were prepared, each dated September 5, 2022. The reports are substantially similar, but one declares minor to be "not suitable" and the other declares minor to be "suitable" for informal probation.

[4]     The minute order from the hearing indicates the juvenile court "recall[ed] and vacate[d]" minor's order of informal probation.  However, the hearing transcript states that when the court stated it was "going to order [that the petition be recalled and vacated]," minor's adoptive mother disclosed minor's new offense to the court.  When the court clerk asked the court if it was recalling its order of dismissal, the court confirmed it was.

count 1), felony vandalism (Pen. Code, § 594, subd. (a); count 2), misdemeanor battery (Pen. Code, § 242; count 3), felony assault (Pen. Code, § 245, subd. (a)(4); count 4), misdemeanor battery on a school employee (Pen. Code, § 243.6; count 5), and misdemeanor vandalism (Pen. Code, § 594, subd. (a); count 6).[5]

On December 19, 2023, after minor ran away from her placement, the juvenile court issued a bench warrant. A follow-up section 241.1 staffing report recommended minor be adjudicated and placed on formal probation.

On December 27, 2023, following minor being taken into custody on the warrant, minor waived her rights and admitted the allegations of the third amended petition. The juvenile court terminated dependency jurisdiction over minor and terminated minor's section 654.3 informal probation.

On January 11, 2024, the juvenile court declared minor a ward of the court and placed minor on formal probation. Minor was committed to 180 days in juvenile hall, less 66 days' credit for time served and was committed to the Tulare County short-term program at the county juvenile ranch camp or forestry camp for a period of 180 days. The court set minor's maximum confinement time at four years six months.[6]

On February 27, 2024, a notice of violation of minor's probation was filed pursuant to section 777, subdivision (a), alleging minor failed to abide by the rules and regulations of juvenile hall, to obey all laws, and to abstain from disruptive and assaultive behavior.

---

[5] The third amended petition alleged count 1 occurred on or about July 20, 2022; count 2 occurred on or about June 27, 2022; count 3 occurred on or about June 27, 2022; count 4 occurred on or about May 11, 2023; count 5 occurred on or about October 23, 2023; and count 6 occurred on or about October 23, 2023.

[6] The record does not show minor appealed from this declaration of wardship and placement.

On March 1, 2024, a new wardship petition was filed pursuant to section 602, alleging minor committed felony resisting an executive officer by means of force or violence (Pen. Code, § 69; count 1).

On March 7, 2024, minor waived her rights and admitted the probation violation and the allegation of the March 1, 2024 petition.

On April 30, 2024, the juvenile court held a disposition hearing. The court ordered minor to continue probation. Minor was ordered to serve 365 days of juvenile detention in the mid-term program and was granted 136 days' credit for time served. Other conditions of probation were imposed. The court set minor's maximum possible term at five years, two months.

On May 2, 2024, minor filed a notice of appeal.

**FACTUAL SUMMARY**

Minor was born on June 26, 2009.

***Facts Underlying the July 22, 2022 Petition***

On July 20, 2022, when minor's adoptive father instructed her to go to her room, she pushed, slapped and struck him once with her fist.

***July 22, 2022 Detention Report and Probation Report***

The July 22, 2022 probation report contained an assessment of minor from July 21, 2022. It stated,

> "[Minor's adoptive] parents report they fear for the safety of all members of the family if … minor is in the home. They advise she does not follow the rules of the home and is constantly running away from the home. They report … minor is currently receiving [W]raparound [S]ervices, and is currently taking medication for her diagnosis of PTSD, ODD, and has been diagnosed with [h]istrionic [p]ersonality [d]isorder. The parents informed … minor meets with therapist [seven times] per week, and is currently working with multiple therapists. They claim … minor tells them she will hurt them and can do 'a[ ]lot worse.' They disclose[d] … minor was previously in a residential treatment facility for alleged sexual assault against her younger sibling. They disclose … minor has a history of watching child pornography and has been suspended from

5.

school for such conduct. They report … minor has [begun] to act out because she wants to 'be like her biological mother.' They believe … minor may be associating with [Sureño] gang members."

### *Facts Underlying the August 24, 2022 First Amended Petition*

On June 27, 2022, minor damaged surveillance cameras inside her adoptive parents' home. The damage was in the amount of $400 or more. The same day, she also headbutted, hit and pushed her adoptive mother.

### *August 18, 2022 Section 241.1 Staffing Report*

The August 18, 2022 staffing report stated minor entered foster care in 2014 and was adopted in 2017. She suffered past trauma and sexual abuse with her biological family and her biological mother was a prostitute. On September 5, 2020, minor's adoptive parents saw her looking at child pornography, rape, and lesbian sex on her computer. On October 7, 2022, her adoptive parents were concerned because she kissed her 11-month-old sibling on the face and lip area while playing with him. The adoptive parents reported they were afraid minor would turn into a "sexual predator" because she had been abused as a young child. The adoptive parents sent her to a group home in Utah for 17 months. She returned to her adoptive parents' home in April 2022.

The report stated the adoptive parents reported minor did not display any abnormal or sexualized behavior since returning to their home, but that she cut her legs, punched walls, and made herself bleed. The report stated minor stated she acted out only because her adoptive parents said derogatory things to her every day, reminding her that she was sexually abused as a child. She stated they tell her she is going to get pregnant at the age of 14, " 'just like' " her birth mother.

The report stated the adoptive parents stated they did not know about minor's sexual abuse history prior to adoption and no longer wanted her as their adoptive child. The adoptive parents contacted the adoption agency about relinquishing her. The adoptive parents reported they wanted to become teachers and were concerned that a relinquishment might affect their career plans.

The report stated minor shared that the adoptive parents' words and behavior made her feel unloved and unwanted. She stated they isolated her to her room. She reported feeling very sad and that she might be better off somewhere else.

The report recommended informal probation.

### October 10, 2022 Probation Report

The October 10, 2022 probation report recommended section 654.2 informal probation for minor. At the time, minor was living in a foster home and getting straight A's in eighth grade.

### October 12, 2022 Detention Hearing

On October 12, 2022, the juvenile court ordered minor to remain a dependent. It assigned her 40 hours of community service and referred her to "Wraparound" counseling services. Minor's foster mother reported minor was working on community service hours and attending counseling. She stated minor had been well behaved at her foster home and minor had no negative law enforcement contacts. Minor was found to be in partial compliance with the terms and conditions of section 654.2 informal probation, as she had completed 20 hours of her 40 assigned community service hours.

### July 18, 2023 Disposition Hearing

The juvenile court found minor to be in partial compliance with her informal probation on January 12, April 5, and May 17, 2023.

On July 18, 2023, the juvenile court found minor in compliance with her informal probation. The court stated it was "going to order [that the petition be recalled and vacated]," and dismiss her section 654.2 informal probation as satisfactorily completed. However, minor's adoptive mother interrupted the court and disclosed minor's new offense. When the court clerk asked the court if it was recalling its order of dismissal, the court confirmed it was.

***Facts Underlying the July 21, 2023 Second Amended Petition***

On May 11, 2023, minor blocked another student at her school from going to the restroom. Minor then punched the other student and pushed her, got on top of her and continued to physically attack her for "no apparent reason." The other student suffered visible injuries and had to go to the hospital after the attack.

***August 3, 2023 Pretrial Hearing***

After minor denied the allegations of the second amended petition, the juvenile court ordered a section 241.1 staffing report and referred the matter to probation for a section 654.2 suitability report. The foster family agency social worker indicated minor was doing very well in her resource home.

***August 21, 2023 Section 654.2 Suitability Report***

The August 21, 2023 section 654.2 suitability report recommended informal probation. Minor's resource foster mother stated minor's behavior was " 'good' " with a lot of improvement. Minor was benefitting from "Wraparound" counseling services and was controlling her emotions. It stated minor agreed her relationship with the resource foster parents was good. The report recommended informal probation.

***August 23, 2023 Section 241.1 Staffing Report***

The August 23, 2023 section 241.1 staffing report stated minor's prior resource foster parents placed a 14-day notice due to minor's defiant behavior. She continued to participate in mental health services through "Wraparound" counseling and was working to identify triggers and use positive communication skills. The report also noted minor was expelled from school on May 16, 2023, for battery, and was attending a community day school. Minor reported she liked her current resource home, as the foster parents treated all the children equally. The report recommended informal probation.

***August 24, 2023 Disposition Hearing***

On August 24, 2023, the juvenile court ordered minor to be placed on section 654.3 informal probation and to remain a dependent.

*Facts Underlying the October 25, 2023 Third Amended Petition*

On October 23, 2023, minor's school principal attempted to stop her from fleeing the school campus. Minor hit him with a closed fist and kicked him several times. That same day, she had damaged or destroyed approximately $50 of various classroom items and school supplies.

*October 26, 2023 Pretrial Hearing*

On October 26, 2023, the juvenile court ordered minor to be placed in a new resource home. She was admonished by the court regarding her runaway history, and the court stated she would be detained if she ran away again from her placement.

In response to the juvenile court's concerns about minor's runaway behavior, minor asked the court to put her on an electronic GPS ankle monitor. The court agreed an electronic monitor might be useful and ordered minor to be fitted with one. The court warned minor not to cut the monitor off or throw it away.

*November 9, 2023 Pretrial Hearing*

On November 9, 2023, minor asked the juvenile court to have the ankle monitor removed, despite having further behavioral issues since it was put on. The court declined, stating:

> "I think [the monitor is] the only thing keeping [minor] from getting into more trouble. So[,] no. She'll remain on the monitor. On the 21st [of November], when we come back [to court], we can reassess. If she's doing well at home and at school and so forth, I will seriously consider taking her off. If there's no need for it, there's no reason to have her on the monitor. She needs to demonstrate that she's doing okay."

*November 21, 2023, Pretrial Hearing*

On November 21, 2023, the juvenile court held a pretrial hearing. Minor's adoptive mother told the juvenile court she had seen a video of minor with a "much older" man. The video was recorded in a car. In the video, minor and the

9.

man cut off the electronic monitoring device and threw it out the car window. The court issued a warrant for minor's arrest.

### *December 19, 2023 Detention Hearing*

On December 19, 2023, the juvenile court held a detention hearing. Minor was in custody after being apprehended on the warrant. She had been a runaway for approximately five weeks. While on the run, minor lived in a " 'trap house,' " where she had daily access to cocaine and marijuana.[7]

The court ordered a section 241.1 staffing report. Minor asked the court to release her from custody. She stated to the court she would not run away from her placement again. The court stated,

> "I don't believe it. I've tried very, very hard for a long, long time to get [minor] to [not run away]. It doesn't work. I'm more concerned about her out there in the street running around and doing God knows what. I think right now it's in her best interest that she be detained. I am absolutely concerned that something terrible is going to happen to her. She'll remain detained."

### *December 22, 2023 Section 241.1 Staffing Report*

The December 22, 2023 section 241.1 staffing report discussed several incidents involving minor running away from her resource home. While on runaway status, minor was living in a "trap house" where she had access to drugs and was on the run for approximately five weeks. Minor also had burn marks on her arms and several tattoos. The section 241.1 staffing report recommended minor be made a ward of the juvenile court and that services through delinquency proceedings and probation should move to

---

[7]    "Trap house" is slang for a place where drugs are bought, sold, or used. (See <https://www.dictionary.com/browse/trap-house>, [as of March 4, 2024].) (<https://www.dictionary.com/browse/cutover>, [as of Nov. 7, 2019].)

the forefront, due to her history of absconding from resource placements, substance abuse and inconsistent school attendance.

### December 27, 2023 Section 241.1 Staffing Hearing

On December 27, 2023, minor waived her rights and admitted the allegations of the third amended petition.  The juvenile court terminated dependency jurisdiction and section 654.3 informal probation.  The court ordered minor to be seen regularly by mental health services.

### January 11, 2024 Disposition Hearing

On January 11, 2024, the juvenile court committed minor to the short-term program for six months.  The maximum term of confinement was set at four years six months.  Minor was given 66 days of credit for time served.  The court ordered minor to attend school regularly, to not use or possess drugs or alcohol, to participate in individual, substance and anger management counseling, and to perform 20 hours of community service.  The court also imposed gang terms.

### Facts Underlying the February 27, 2024 Probation Violation and Fourth Wardship Petition

On February 5, 2024, an officer at the juvenile facility where minor was committed encountered minor with a fresh cut on her arm and holding a toothbrush with a sharpened edge.  Minor refused to hand the toothbrush to the officer.  When the officer grabbed minor's arm to prevent her from harming herself, minor struck the officer several times with a closed fist.

### March 7, 2024 Jurisdiction Hearing

On March 7, 2024, the juvenile court told minor she could be placed in a foster home as well as other options.  Minor waived her rights and admitted the petition and probation violation.

### March 21, 2024 Probation Report

The March 21, 2024 probation report stated:

"Fourteen year old [minor] is making a formal appearance before the Tulare County Superior Court, Juvenile Division regarding disposition for a [f]elony, violation of [Penal Code] section 69 … [o]bstruct/[r]esist [e]xecutive officer and a [v]iolation of [p]robation, violation of section 777[, subdivision](a) …. [¶] … [¶]

"In addition, … minor was found in violation as she failed to comply with her terms and conditions of the [s]hort-[t]erm [p]rogram by failing to abide by the rules and regulations of the [j]uvenile [d]etention [f]acility further obtaining a new offense.

"[M]inor exhibits a repeated pattern of criminogenic behavior and with that, [p]robation believes … minor requires a greater period of time in a structured facility which can be offered through the [m]id-[t]erm [p]rogram. [M]inor has failed to play an active role in her rehabilitation and had failed to address her criminogenic needs although has been offered tools to do so.

"Therefore, it is respectfully recommended … minor be re-adjudged a ward of the [j]uvenile [c]ourt and be committed to the Tulare County [m]id[-][t]erm [p]rogram, for [365] days. It is further recommended … minor be ordered to abide by the standard terms and conditions of probation, not in conflict, as well [as] those specific to h[er] needs, including she abide by all of the rules and regulations of the [m]id[-][t]erm [p]rogram and participate in all services as provided by the program; as well as those pertaining to the [a]ftercare [p]rogram, which include she attend school as scheduled, not use or possess alcohol, marijuana, or controlled substances, abide by an 8:00 [p.m.] curfew, enroll and participate in anger management and individual counseling, not knowingly have contact with any known gang member and be subject to search and test clauses. Further, all prior terms and condition[s] of probation not in conflict remain in full force and effect."

***April 2, 2024 Probation Memorandum***

An April 2, 2024 probation memorandum stated minor's adoptive parents were unwilling to take her back if she were released. The memorandum noted her runaway and behavior issues in five placement homes and recommended she be placed in the mid-term program.

12.

*April 30, 2024 Disposition Hearing*

On April 30, 2024, minor's counsel requested she be placed in a foster home. The juvenile court denied the request, stating minor was not eligible for foster placement, and believed custody and the camp program recommended by probation were appropriate. The court explained:

> "What my intention is, and the recommendation of probation is, mid[-]term program, which is not going to be until [minor is] 18. She's not going to be in custody until she's 18, and they are going to have to look at placement.

> "Unfortunately, there are more limited placements when you do stuff that makes you a ward of the [c]ourt than there are when you're just a dependent. I can't control the way the availabilities are. Not a lot of people are willing to take in a teenager who has a delinquent background. Probation does its best, but they have limited options. The next option is a short-term residential program.

> "My hope is I'll place you in the midterm, you'll get enough services while you're at the detention facility so that you can address your anger management issues and get some counseling so that when you're placed in the aftercare, they can find good placement for you, and you won't be returning back to the detention facility.

> "I tried as best I could when you first appeared in front of me to keep you as a dependent, but I'm limited in my actions to place you in foster care because you're no longer a dependent of the [c]ourt. It really is incumbent upon you, [minor], to behave appropriately so you don't have any further conduct.

> "What you did while you were detained is inappropriate. If you continue to act out while you're detained, you will remain detained. If you choose to make a choice, and you want to get out of the detention facility, let us help you so you can get released. Make sense?"

Minor was continued on probation. The juvenile court placed minor in the mid-term program for 365 days with 136 days of credit for time served. The court found the maximum amount of time minor could be detained on the petition to be eight months and set the maximum term of confinement for all petitions at five years two months.

13.

Minor was ordered to attend school, participate in all programs offered in the mid-term program, perform 80 hours of community service, and write a letter of apology to the victim. Gang terms and a restitution fine of $100 were imposed.

<h2 style="text-align:center">DISCUSSION</h2>

Minor contends the juvenile court abused its discretion when it placed minor in the mid-term program. The People disagree and argue as a threshold issue that whether the court erred by committing her to the mid-term program may be moot. We agree with the People.

*Mootness*

The People argue as a threshold issue that whether the juvenile court erred when it committed minor to the mid-term program is moot because her release from detention in the mid-term program would have occurred on December 15, 2024.[8] We agree.

" 'A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief.' " (*In re Stephon L.* (2010) 181 Cal.App.4th 1227, 1231.) "Generally, courts decide only 'actual controversies' which will result in a judgment that offers relief to the parties.' [Citations.] Thus, appellate courts as a rule will not render opinions on moot questions: '[W]hen, pending an appeal from the judgment of a lower court, and without fault of the [respondent], an event occurs which renders it impossible for [the reviewing court] if it should decide the case in favor of [appellant], to grant [appellant] any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' " (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178.)

Minor's period of confinement of 365 days, less 136 days credit, in the mid-term program ended December 15, 2024, pursuant to the juvenile court's April 30, 2024

---

**8**    Minor did not file a response addressing the People's argument that the issue of whether the juvenile court erred when it committed minor to the mid-term program may be moot.

order.[9]  Although a maximum possible term was placed on the record as required by law, nothing in the record reflects any additional detention time beyond what is noted above. Because we cannot provide minor with any effective relief, as her time for release from detention in the mid-term program has already occurred, we find the issue of whether the court erred when it committed minor to the mid-term program for 365 days to be moot. (*See In re Sodersten* (2007) 146 Cal.App.4th 1163, 1217.)

### *Commitment to the Mid-Term Program*

However, regardless of whether the issue is moot, we conclude the juvenile court did not err when it committed minor to the mid-term program on April 20, 2024.

"After finding that a minor is a [ward of the court], the court shall hear evidence on the question of the proper disposition to be made of the minor.  The court shall receive in evidence the social study of the minor made by the probation officer and any other relevant and material evidence that may be offered, including any written or oral statement offered by the victim[.]  …  In any judgment and order of disposition, the court shall state that the social study made by the probation officer has been read and that the social study and any statement has been considered by the court."  (§ 706.)

When determining the appropriate disposition in a delinquency proceeding, the juvenile courts are required to consider "(1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history."  (§ 725.5.)  The court is required to "consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him adequate care."  (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.)

The standard of review in juvenile commitment decisions is abuse of discretion. (*In re Joey G.* (2012) 206 Cal.App.4th 343, 346.)  " 'A [juvenile] court abuses its

---

**9**      Minor was to be detained in the mid-term program for a total of 229 days (365 days–136=229).  Two hundred and twenty-nine days after the April 30, 2024 hearing is December 15, 2024.

15.

discretion when the factual findings critical to its decision find no support in the evidence.' " (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.)  Courts of Appeal reviewing juvenile court dispositions "must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them."  (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 53.) " 'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value.' " (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.)

" ' "In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." ' " (*In re Oscar A.* (2013) 217 Cal.App.4th 750, 756.)  In reviewing a commitment determination, we remember that " 'the primary goal behind maintaining separate courts and procedures for adults and minors is to ensure that juvenile offenders who have not yet become hardened criminals receive treatment and rehabilitation.' " (*In re Carlos E.* (2005) 127 Cal.App.4th 1529, 1542.)  That goal is reflected in the mandate that juvenile courts consider "the protection of the public as well as the rehabilitation of the minor" in reaching a disposition.  (*Ibid.*)  Accordingly, "when we assess the record in light of the purposes of the Juvenile Court Law [citation], we evaluate the exercise of discretion with punishment and public safety and protection in mind." (*In re Lorenza M.*, *supra*, 212 Cal.App.3d at p. 58.)

Here, the juvenile court stated, in pertinent part:

> "What my intention is, and the recommendation of probation is, midterm program, which is not going to be until [minor is] 18.  She's not going to be in custody until she's 18, and they are going to have to look at placement.

> "Unfortunately, there are more limited placements when you do stuff that makes you a ward of the [c]ourt than there are when you're just a dependent.  I can't control the way the availabilities are.  Not a lot of people are willing to take in a teenager who has a delinquent background.

Probation does its best, but they have limited options.  The next option is a short-term residential program.

"My hope is I'll place you in the midterm, you'll get enough services while you're at the detention facility so that you can address your anger management issues and get some counseling so that when you're placed in the aftercare, they can find good placement for you, and you won't be returning back to the detention facility.

"I tried as best I could when you first appeared in front of me to keep you as a dependent, but I'm limited in my actions to place you in foster care because you're no longer a dependent of the [c]ourt."

The juvenile court's statement shows it read and considered the probation department's report, as required by section 706, and considered minor's age, previous delinquent history, and the circumstances and gravity of her offenses when it committed her to the mid-term program, as required by section 725.5.  Pursuant to sections 706 and 725.5, and in light of the dual purposes of juvenile law to protect the public and rehabilitate the minor, there is sufficient evidence to support its commitment of minor to the mid-term program for 365 days, less 136 days of credit.  Accordingly, regardless of whether the issue is moot, we conclude that the court did not err when it committed minor to the mid-term program.

## DISPOSITION

The appeal is dismissed as moot.